FILED - USDC - FLMD - ORL
MAR 22 2024 AM11:50

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **SOMMER SHERWOOD, a Florida resident** | § | |
| **Plaintiff,** | § | |
| **v.** | § | 6:24-cv-00560-PGB-RMN |
| **TOBIAS & ASSOCIATES LLC,** d/b/a **GET ME HEALTHCARE,** a Florida Corporation | § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT:

Pro Se Plaintiff SOMMER SHERWOOD, brings this action against Defendant Tobias & Associates LLC, d/b/a Get Me Healthcare for violations of the federal Telephone Consumer Protection Act ("TCPA") and its implementing regulations alleging as follows:

## PRELIMINARY STATEMENT:

**1.** As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone...For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

**2.** Plaintiff SOMMER SHERWOOD ("Plaintiff" or "Sherwood") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant TOBIAS & ASSOCIATES LLC, d/b/a GET ME HEALTHCARE ("Tobias") sent a series of automated telemarketing calls for the purposes of commercial solicitation by contacting Plaintiff's cellular telephone number listed on the National Do-Not-Call Registry, which is prohibited by the TCPA.

**3.** Plaintiff never consented to receive any of these phone calls, which were placed to her for telemarketing purposes.

## **PARTIES:**

**4.** The Plaintiff is SOMMER SHERWOOD ("Plaintiff" or "Sherwood"), a natural person, who resides in Orlando, Florida, is a citizen of the State of Florida, and was the individual who received the alleged phone calls in this case on her private mobile telephone, and was a resident of Florida during the calls, in this case in Orange County, Florida.

**5.** Defendant TOBIAS & ASSOCIATES LLC, d/b/a GET ME HEALTHCARE ("Tobias") is a corporation organized and existing under the laws of Florida and can be served via registered agent Michael Tobias at Defendant's principal place of business, 123 NM 13th St, 101 Boca Raton, FL 33432. Tobias & Associates LLC markets and sells, inter alia, insurance products, and engages in telemarketing into this district, as it did with Plaintiff.

## **JURISDICTION AND VENUE**

**6.** **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Ser's., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under the Florida Telemarketing Act because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff; adds little complexity to the case.

**7.** **Personal Jurisdiction**. This Court has general personal jurisdiction over Tobias because Defendant is a Florida corporation.

8. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims - the calls and sale of goods and services – occurred in this District and because Plaintiff resides in this District.

## Statutory Background

### The Telephone Consumer Protection Act

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits Automated Telemarketing Calls

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(iii).

11. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. The FCC also recognized that "wireless customers are charged for incoming calls

whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

**14.** In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The National Do-Not-Call Registry</u>

**15.** The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

**16.** The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

**17.** The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

**The TCPA Imposes Personal Liability on Individuals Who Participate in or Commission**

**Telemarketing Calls**

**18.** Under the TCPA, an individual may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person*. 47 U.S.C. § 217 (emphasis added).

**19.** When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g.*, *Jackson's Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**FLORIDA TELEMARKETING SALE ACT FLA. Stat. § 501.059**

**20.** Florida Statutes § 501.059 makes it a violation to "make or knowingly allow a telephone sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

**21.** A "telephone sales call" is defined as a 'telephone call, text message, voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(j).

**22.** "Doing business in this state" means businesses that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida.

**23.** "Prior express written consent" means an agreement in writing that: Fla. Stat. § 501.0059(g).

a. Bears the signature of the called party;

b. Clearly authorizes the person making or allowing the placement of a telephonic sales calls by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephone sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

c. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

d. Includes a clear and conspicuous disclosure informing the called party that;

1. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or playing of a recorded message when a connection is completed to a number called; and

2. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such agreement as a condition of purchasing any property, goods, or services.

**24.** A person aggrieved by a violation of this section may bring an action to recover actual

damages or $500, whichever is greater. Fla. Stat. § 501.059(10)(a)(2).

**25.** If the court finds that the Defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a). Fla. Stat. § 501.059(10)(a)(2)(b).

## FLORIDA TELEMARKETING ACT

**26.** A commercial telephone seller or salesperson making a commercial telephone solicitation call may not use technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. Fla. Stat. § 501.616(7)(b).

**27.** A commercial telephone seller or salesperson may not transmit more than three commercial telephone solicitation phone calls from any number to a person over a 24-hour period on the same subject matter or issue, regardless of the phone number used to make the call. Fla. Stat. § 501.616(6)(b).

**28.** In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or punitive damages, including costs, court costs, and attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. § 501.625.

## FACTUAL ALLEGATIONS

**29.** Defendant provides insurance services to people in Florida and nationwide.

**30.** Defendant routinely violates the TCPA as a part of their business model and knowingly and willfully commit TCPA violations.

**31.** Defendant uses telemarketing to promote their products and services.

32. Plaintiff did not consent to any of the phone calls alleged herein.

33. On November 25, 2023, Plaintiff personally and successfully added their cellphone number, which ends in -7911, to the National Do-Not-Call Registry ("DNC").

34. Plaintiff has received at least ten (10) telemarketing calls from Defendant soliciting health insurance products between December 1, 2023, and, December 11, 2023, to her personal cell phone number (321) 878-7911.

35. **Call 1-3, DNC Requests #1-3:** On December 1, 2023, Plaintiff received 3 phone calls within a three-hour timeframe. Plaintiff answered the phone and was subjected to solicitation for health insurance by representatives identified as either "Megan," "Michael," or "Danny" from the Health Insurance Marketplace. *See Table A.*

36. On all three calls described in the above paragraph Plaintiff explicitly conveyed her disinterest to the telemarketer telling them to "stop calling" and made clear her registration on the DNC list, subsequently concluding the phone call.

37. **Calls 4-9:** From December 2, 2023, through December 7, 2023, Plaintiff continued to receive unauthorized solicitation calls and was persistently solicited health insurance by various representatives affiliated with the Health Insurance Marketplace but simply told them she was still uninterested and hung up. *See Table A.*

38. **Call 10:** On December 11, 2023, at 2:21 PM, Plaintiff received a phone call, with her caller identification displaying (321) 238-3690. Plaintiff was again solicited for health insurance by "James from Health Insurance Marketplace" and decided to play along in an attempt to unveil the identity of the persistent caller.

39. Plaintiff was eventually transferred to "Nicole Moskowitz", an agent representing Defendant. Following the transfer, Nicole, using the email address

mail@getmehealthcare.com, sent Plaintiff an email requesting an electronic signature at 2:31 PM.

**40.** The website https://getmehealthcare.com/ is Defendant Tobias's.

**41.** On information and belief, the area code on the caller ID was spoofed or selected by contrivance to convey to Plaintiff the false impression that the caller was from her area.

**42.** At no point during the first call did Plaintiff grant consent for Defendant or Defendant's agent(s) to make subsequent calls to her in the future.

**43.** All the calls, as asserted in this legal action, were initiated with manipulated caller IDs commencing with the area code (321) and were carried out by Defendant and/or their agents with the intent of promoting the defendant's health insurance services and products to Plaintiff.

**44.** On March 18, 2023, Plaintiff called each of the phone numbers listed in Table A, column titled "Caller ID". Each of the phone numbers is a non-working number that says "Welcome to Verizon. Your call cannot be completed as dialed."

**45.** The following is a table detailing the telephone calls sent by Defendant to Plaintiff's cell phone number:

**Table A**

| Number: | Date: | Time: | Caller ID: | Note: |
|---|---|---|---|---|
| 1. | 12/1/23 | 2:07 PM | 321-587-4569 | Unauthorized call - Megan from Health Insurance Marketplace – DNC Request, told not to call back |
| 2. | 12/1/23 | 4:21 PM | 321-951-1136 | Unauthorized call - Michael from Health Insurance Marketplace - DNC Request, told not to call back |
| 3. | 12/1/23 | 4:37 PM | 321-802-6484 | Unauthorized call - Danny from Health Insurance Marketplace - DNC Request, told not to call back |
| 4. | 12/2/23 | 10:25 AM | 321-515-9205 | Unauthorized call - Megan Health Insurance Marketplace - hung up |

| | | | | |
|---|---|---|---|---|
| **5.** | 12/5/23 | 11:29 AM | 321-723-1199 | Unauthorized call - Lisa Health Insurance Marketplace - hung up |
| **6.** | 12/5/23 | 5:35 PM | 321-972-3368 | Unauthorized call - Andrew Health Insurance Marketplace - hung up |
| **7.** | 12/6/23 | 3:27 PM | 321-723-4556 | Unauthorized call - Health Insurance Marketplace - hung up |
| **8.** | 12/7/23 | 6:06 PM | 321-373-7868 | Unauthorized call - Alex Health Insurance Marketplace - hung up |
| **9.** | 12/8/23 | 9:34 AM | 321-988-9358 | Unauthorized call - Michael Health Insurance Marketplace - hung up |
| **10.** | 12/11/23 | 2:21 PM | 321-238-3690 | Unauthorized call - James from Health Insurance Marketplace - transferred to Nicole from Tobias |

**46.** Plaintiff was not interested in Defendant's health insurance services.

**47.** At no point did Plaintiff ever waive her rights to sue Defendant under the TCPA or any Florida state law.

**48.** Defendant did not have Plaintiff's consent to make any of these telemarketing calls.

**49.** Defendant did not have Plaintiff's prior express consent (oral or otherwise) to make any of these telemarketing calls.

**50.** Prior to these unsolicited telephone communications, Plaintiff has never done any business with Defendant, and Plaintiff never provided Defendant with her cellular telephone number.

**51.** To the extent that Defendant contends that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendant can show that they had prior express consent in writing and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and

maintaining records documenting such access. Defendant did not have prior express written consent to such calls from Plaintiff.

**52.** Plaintiff is informed and believes and thereon alleges that Defendant does not have policies and procedures in place to prevent telephone solicitations in violation of the TCPA regulations.

**53.** Upon information and belief, Defendant does not scrub their calling lists against the National Do-Not-Call Registry.

**54.** Upon information and belief, Defendant does not train their employees and representatives in order to comply with "Do-Not-Call requests" made by consumers, such as Plaintiff. As demonstrated in the above allegations, Defendant did not stop calling Plaintiff's phone number when they were told to stop calling.

**55.** Plaintiff pays for each incoming and outgoing call on her telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**56.** Plaintiff received the calls on her private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with Metro PCS as a cellular telephone number and is used for personal purposes.

**57.** These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

**58.** Defendant is not exempt from the TCPA.

**59.** Defendant's calls to Plaintiff were "telephone solicitations" as defined by the TCPA.

**60.** Defendant's calls to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

**SUMMARY**

**61.** Plaintiff received ten (10) telemarketing calls from Defendant to Plaintiff's personal cell

phone number which is registered on the National Do-Not-Call list. Plaintiff made at least three (3) do not call requests to Defendant that were ignored.

**62.** *Defendant intentionally spoofed the caller identification on every phone call at issue in* this Complaint in violation of Fla. Stat. § 501.616(7)(b).

**INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS**

**63.** Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

**64.** Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

**65.** Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

**66.** Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of her cell phone.

**Plaintiff's Cell Phone is a Residential Number**

**67.** The calls were to Plaintiff's cellular phone (321) 878-7911 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays for the

cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

## CAUSES OF ACTION

### I. FIRST CLAIM FOR RELIEF
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)**

**68.** Plaintiff re-alleges and re-adopts paragraphs 1 through 67 of this Complaint as if fully set forth herein.

**69.** Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**70.** Plaintiff was statutorily damaged at least ten (10) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

**71.** Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

**72.** As a result of Defendant's and Defendant's agents' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for herself $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

**73.** Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making non-emergency telemarketing calls to cellular telephone numbers without the prior express written consent of the called party.

### SECOND CLAIM FOR RELIEF:

**(Violations of Fla. Stat. 501.059)**

**74.** Plaintiff incorporates the preceding paragraphs 1-67 as if fully set forth herein.

**75.** Defendant and/or their affiliates and authorized representatives made a telephone call to Plaintiff for the purpose of soliciting a sale of consumer goods. Fla. Stat. § 501.059(j).

**76.** Plaintiff is entitled to an award of at least $500 in damages for each such violation of Fla. Stat. § 501.059(j) pursuant to Fla. Stat. § 501.059(10)(a)(2).

**77.** Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Fla. Stat. § 501.059(10)(a)(b).

## II. <u>THIRD CLAIM FOR RELIEF:</u>
## (Violations of Florida TELEMARKETING ACT)

**78.** Plaintiff re-alleges and re-adopts paragraphs 1 through 64 of this Complaint as if fully set forth herein.

**79.** Defendant called/texted Plaintiff more than three times within a 24-hour period. Fla. Stat. 501.616(6)(b).

**80.** Defendant called Plaintiff using automated dialing equipment that intentionally transmitted false caller identification information. Fla. Stat. 501.616(7)(b).

**81.** Damages for the FTA (Fla. Stat. § 501.616(6)(b) and Fla. Stat. § 501.616(7)(b)) are analogous to the TCPA and numerous state laws, including Fla. Stat. § 501.059, that were implemented to protect consumer telephone privacy rights. The federal and state programs have almost universally set the penalties for such violations at a minimum of $500. States have further followed the Federal lead allowing for treble damages up to $1,500 per call per violation. Based on precedent it would be customary and not out of the ordinary to base an award for FTA violations on the standard $500 - $1,500 per violation.

**82.** In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or penalties and/or punitive damages, including costs, court costs, attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. 501.625.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SOMMER SHERWOOD prays for judgment against the Defendant as follows:

A. Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violates the TCPA and Florida state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An Award of $1,500 per violation in statutory damages arising for the intentional violations of Fla. Stat. 501.059 for ten (10) violations.

E. An award of $1,500 per call in statutory damages arising from the TCPA intentional violations against the corporation for ten (10) calls.

F. An award of $1,500 per violation in statutory damages arising for the intentional violations of Fla. Stat. § 501.616(6)(b) for three (3) violations.

G. An award of $1,500 per violation in statutory damages arising for the intentional violations of Fla. Stat. § 501.616(7)(b) for ten (10) violations.

H. An award to Plaintiff of damages, as allowed by law under the TCPA;

I. An award to Plaintiff of pre-judgment and post-judgment interest, and costs, as allowed by law and equity;

J. Such further relief as the Court deems necessary, just, and proper.

**Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: March 22, 2024,

Respectfully submitted,

SOMMER SHERWOOD
Plaintiff, Pro Se
14855 Hawksmoor Run Circle
Orlando, Florida 32828
sherwoodsommer1@gmail.com
407-244-6059